IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYRONE W.,**[1] <br><br> Plaintiff, <br><br> v. <br><br> **ANDREW M. SAUL,** Commissioner of Social Security, <br><br> Defendant. | Case No. 3:19-cv-01719-IM <br><br> **OPINION AND ORDER** |

**IMMERGUT, District Judge**

Plaintiff, Tyrone W., seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id. See also Bray*, 554 F.3d at 1226.

BACKGROUND

**A. Plaintiff's Application**

Plaintiff filed an application for SSI on July 11, 2017, initially alleging disability since January 1, 2007, but later amending his alleged onset date to his protected filing date of July 11, 2017. AR 13, 243–45, 342. Plaintiff was born on January 1, 1978, and he was 39 years old as of the amended alleged disability onset date for SSI. AR 243. He alleged disability due to mental illness, schizophrenia, schizoaffective disorder, depression, suicidal ideation, sciatic nerve pain, chronic lower back pain, and numbness in his arms. AR 109–10, 273. The Commissioner denied

PAGE 2 – OPINION AND ORDER

his application initially and upon reconsideration. AR 142, 152. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 155.

A hearing was held on held on December 6, 2018, but Plaintiff did not attend. AR 62–69. On request, Plaintiff showed good cause for not appearing and asked for a second hearing. AR 14, 204. The ALJ granted Plaintiff's request and held a second hearing on May 1, 2019. AR 33–61. After the hearing, the ALJ found that Plaintiff had not been disabled from July 11, 2017 through the date of the decision. AR 27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–2, 237–38.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

PAGE 3 – OPINION AND ORDER

> impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.
>
> 3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(d), 416.920(e), 416.945(b)-(d). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 146 & n.5. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant

PAGE 4 – OPINION AND ORDER

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100. *See also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At the first step of the disability analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his protected filing date of July 11, 2017. AR 16.

At step two, the ALJ found Plaintiff's hepatitis C infection, schizophrenia spectrum disorder, bipolar disorder, personality disorder, anxiety disorder, and substance use disorder (methamphetamine and heroin) all constituted severe impairments, meaning that they more than minimally affected his ability to perform basic work activities. *Id.* The ALJ found that the other medical conditions discussed in the medical records or alleged by Plaintiff were not severe impairments. AR 17.

At step three, the ALJ found that Plaintiff's mental impairments, including his substance use disorder, met or equaled the severity of listings 12.03, 12.04, 12.06, and 12.08 of 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17–18. The ALJ then determined that in the absence of substance use, Plaintiff would not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 23. The ALJ also determined that, in the absence of substance use, Plaintiff would have the residual functional capacity ("RFC") to:

>perform light work as defined in 20 CFR 416.967(b) except as follows. He would be able to frequently climb, balance, stoop, kneel, crouch, and crawl. He would be able to perform simple, routine tasks (SVP not exceeding two and GEDs not exceeding two). He would be able to have occasional public contact and occasional coworker contact.

AR 24.

At step four, the ALJ determined that Plaintiff did not have any past relevant work. AR 26. At step five, that ALJ determined that in the absence of a substance use disorder, Plaintiff could perform a significant number of jobs in the national economy, including product line solderer (DOT 813.684-022), electrical accessories assembler (DOT 729.687-010), and wire worker (DOT 728.684-022). AR 26–27. The ALJ therefore concluded that Plaintiff's substance use disorder is a contributing factor material to the determination of disability, and that Plaintiff is not disabled. AR 27.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that he is not disabled. He argues that the ALJ erred in making that determination by: (1) erroneously determining that Plaintiff's substance use disorder was material to a finding of disability; and (2) improperly rejecting the medical opinion of Karla Causeya, PsyD. ECF 17 at 5.

### A. Plaintiff's Substance Use Disorder as a Contributing Factor Material to the Determination of Disability

If a claimant's medical record includes evidence of a claimant's drug abuse or alcoholism ("DAA"), the ALJ must determine if, absent the DAA, the claimant would still be disabled under the Act. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535(a), 416.935(a); *Sousa v. Callahan*, 143 F.3d 1240, 1242 (9th Cir. 1998); *see also Parra v. Astrue*, 481 F.3d 742, 744–45 (9th Cir. 2007); SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013). In other words, the ALJ must determine if alcoholism or drug addiction is a contributing factor material to the determination of

PAGE 6 – OPINION AND ORDER

disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). To assess materiality, the ALJ must ask if the claimant would still be deemed disabled under the Act if he or she were to "stop using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 916.935(b)(1). The determination is made by evaluating "which of [claimant's] current physical and mental limitations . . . would remain if [claimant] stopped using drugs or alcohol and then determin[ing] whether any or all of [claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). The claimant carries the burden of establishing that absent substance use, the claimant would still be disabled. *Parra*, 481 F.3d at 748.

In this case, the ALJ determined that medical records from Plaintiff's period of sobriety spanning roughly from August 2014 to late July 2015 supported the finding that if Plaintiff abstained from substance use, even with his other mental impairments, he would be able to perform unskilled work. AR 24–25; *see also* AR 361–470, 549. During this period of sobriety Plaintiff was incarcerated or otherwise receiving outpatient treatment following his release from prison. The ALJ reasoned that treatment notes from this period of showed Plaintiff's functioning improved significantly when he was sober. AR 25.

For instance, the ALJ noted that in November 2014, Plaintiff's medical records indicate that he was taking several medications and had "adequate control" of his symptoms. AR 25, 411. Plaintiff stated "overall things are good." *Id.* In December of 2014, Plaintiff reported some visual hallucinations, but his providers also noted he was stable on his current medications. AR 25, 403, 410. In May of 2015, Plaintiff reported he did not have very many depressive or manic swings, and when he felt down, it only lasted a day or two. AR 25, 376. Plaintiff denied suicidal or homicidal ideation, and reported he felt "pretty healthy overall" and had "more clear thinking" on his medication regimen than he had experienced in quite a while. *Id.* In June of 2015, Plaintiff

PAGE 7 – OPINION AND ORDER

reported most of his symptoms were under control, and he denied having hallucinations or suicidal ideation. AR 25, 371. In July 2015, Plaintiff denied suicidal ideation, homicidal ideation, and psychosis, visual hallucinations, paranoia, and delusions. AR 25, 549. He also stated his audio hallucinations were under control. *Id.*

The ALJ also noted that during this period of sobriety the Plaintiff complained of drowsiness from medication, and ongoing problems with sleep, restlessness, poor concentration, distractibility, and mood dysphoria. AR 25, 385, 390, 409. However, Plaintiff's exam findings were largely normal—his speech was normal, his perceptions were within normal limits, his thought process and thought content were appropriate, he was fully oriented and alert, his digit span was normal, he was not delusional, and he did not have suicidal or homicidal ideation. AR 25, AR 390, 403, 409, 420. Plaintiff's medical records also indicated his learning ability was impaired, but his memory was within normal limits, and he did not suffer from ongoing problems with paranoia or audio hallucinations. AR 25, 391, 409, 420. Additionally, during this period, no provider noted Plaintiff appeared to be responding to internal stimuli. AR 25.

Ultimately, the ALJ concluded that the medical records from claimant's period of sobriety in 2014 and 2015 support the finding that if abstinent from substance use, Plaintiff would be able to perform simple, routine tasks, and he would be able to have occasional public contact and occasional coworker contact. *Id.*

Plaintiff contends the ALJ erred by failing to follow Social Security Ruling ("SSR") 13-2p's instructions for analyzing evidence when a claimant has a co-occurring mental impairment. ECF 17 at 7. For instance, Plaintiff contends the ALJ failed to consider that the periods during which his symptoms improved were in the context of highly structured treatment settings, such as intensive outpatient treatment and incarceration. *Id.* Plaintiff also contends that the ALJ failed

to properly consider the numerous emergency department visits and hospitalizations for suicidal ideation and suicide attempts that often occurred shortly after Plaintiff transitioned from inpatient care to a less structured outpatient treatment plan. *Id.* at 7–8. Plaintiff argues that the evidence does not clearly show a difference between the results of treatment for Plaintiff's substance use disorder and treatment for his co-occurring mental health disorders "because he has never had substance use treatment without treatment for his other mental disorders." ECF 17 at 8.

As SSR 13-2p notes, the most complicated scenario in DAA cases is often the determination of whether an impairment would be expected to improve to a non-disabling degree if the claimant ceased substance use. SSR 13-2p, 2013 WL 621536, at *7. There is no reliable method for determining whether a co-occurring mental impairment would improve with abstinence. *Id.* at *9. Accordingly, there must be evidence in the case record establishing that a claimant with a co-occurring mental disorder would not be disabled absent DAA. *Id.* Adjudicators may not solely rely on medical experts to make their materiality determination, other supporting evidence in the record must be identified. *Id.*

In considering a period of abstinence, as the ALJ did in this case, SSR 13-2p instructs that improvement of a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not entirely the cessation of substance use. *Id.* at *12. Thus, "a single hospitalization or other inpatient intervention is not sufficient to establish that DAA is material . . . .We need evidence from outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence." *Id.* at *13. Plaintiff draws from this language to argue that SSR 13-2p *requires* the ALJ to rely on medical record evidence outside a highly structured treatment setting

PAGE 9 – OPINION AND ORDER

to demonstrate that a claimant's mental disorder has or would have improved with abstinence from substance use. ECF 17 at 6. Plaintiff's argument is unavailing.

This Court does not interpret SSR 13-2p to be so rigid. While it is clear a single hospitalization or inpatient intervention is insufficient to establish that DAA is material, a prolonged period of sobriety, even within the context of a highly structured environment such as incarceration, can prove instructive, as it is distinguishable from isolated, short term interventions. Indeed, SSR 13-2p directs the ALJ to assess a period of abstinence based on several factors, including its duration. As SSR 13-2p notes:

> In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate. Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended. To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

The ALJ had ample evidence from Plaintiff's sustained period of sobriety to indicate his marked improvement as compared to periods of substance use. The record indicates that during Plaintiff's period of sobriety, his paranoia, audio hallucinations, and suicidal ideation subsided substantially. *See, e.g.,* AR 371, 376, 409, 411. Moreover, his speech was normal, his perceptions were within normal limits, his thought process and thought content were appropriate, and he was fully oriented and alert. AR 25, AR 390, 403, 409, 420. Although Plaintiff's learning ability was impaired, his memory was within normal limits. AR 391, 409, 420.

By contrast, the ALJ noted a sharp difference in Plaintiff's condition while using substances. For example, the record indicates Plaintiff reported persistent psychosis while using

PAGE 10 – OPINION AND ORDER

methamphetamine. AR 18, AR 521. He also reported having frequent audio hallucinations. AR 18, 561, 522. Moreover, Plaintiff demonstrated significant memory deficits. AR 18; *see also, e.g.* 561, 602, 606–07, 610. Records from Plaintiff's drug use also show he engaged in isolative behavior, and exhibited a restricted mood and affect, in addition to poor eye contact. AR 18, 561, 2519. He also demonstrated challenges concentrating, persisting, or maintaining pace, psychomotor retardation, tangential thought process, and speech latencies. AR 18, 592, 598, 606–07, 610. The ALJ further noted that when Plaintiff used methamphetamine and/or heroin, he exhibited a lack of coping skills and repeatedly forgot to take his medications. AR 18, 561. Additionally, providers also noted Plaintiff exhibited limited insight and poor judgment while using substances, and that his substance use caused him to place himself in high risk situations and resulted in his periodic homelessness. AR 18, 540, 543.  The ALJ was permitted to rely on Plaintiff's sustained period of sobriety and extensive medical record during this period to support his finding that Plaintiff's substance use disorder is a contributing factor material to the determination of disability.

Plaintiff also contends that the ALJ failed to consider Plaintiff's numerous emergency department visits and hospitalizations as evidence that Plaintiff's substance use disorder may not be material. ECF 17 at 7. SSR 13-2p instructs that "a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA *may not be material* even if the claimant is discharged in improved condition after each intervention." 2013 WL 621536, at *13 (emphasis added). Thus, an ALJ may consider the record of hospitalizations and emergency department visits as evidence a claimant's DAA is not material, but he need not categorically find a claimant's DAA is not material where there is other evidence establishing that a claimant would

PAGE 11 – OPINION AND ORDER

not be disabled in the absence of DAA. *See id.* at *9 (requiring only evidence in the case record establishing that a claimant with a co-occurring mental disorder would not be disabled absent DAA to support a materiality determination).

In this case, the ALJ noted that Plaintiff endorsed suicidal ideation and was hospitalized several times for drug overdoses while using illicit substances. AR 18, 560–61, 592. By contrast, in support of his materiality determination, the ALJ noted that during Plaintiff's period of sustained sobriety his conditions improved dramatically. Most notably, Plaintiff repeatedly denied suicidal ideation. Further, his paranoia and audio hallucinations largely subsided. *See, e.g.*, AR 371, 376, 410, 411. The ALJ's interpretation of Plaintiff's improved condition as compared to Plaintiff's numerous hospitalizations and emergency department visits while using substances was reasonable and permissible under the parameters of SSR 13-2p.

At its core, Plaintiff's briefing presents an alternate interpretation of the evidence in the record. However, variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record. *See Batson*, 359 F.3d at 1193, 1196. Where, as here, the "evidence reasonably supports either confirming or reversing the ALJ's decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ." *Id.* at 1196. Because the ALJ's materiality determination was supported by substantial evidence from Plaintiff's medical record, this Court concludes that he did not err in that evaluation.

**B.   Exclusion of the Medical Opinion Evidence of Karla Causeya, PsyD.**

Plaintiff filed his application for benefits on July 11, 2017. AR 13. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §

PAGE 12 – OPINION AND ORDER

404.1520c(a)-(b) (OASDI), § 416.920c(a)-(b) (SSI). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers the "supportability and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. 20 C.F.R. § 404.1520c(c), 416.920c(c).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "At the least, this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Patricia F. v. Saul*, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020). The ALJs are not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2); 404.1520c(b)(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

Dr. Causeya conducted a consultative exam with Plaintiff in October of 2018. AR 2515. Dr. Causeya made several observations, including that Plaintiff had cognitive deficits, concentration problems, psychotic and depressive episodes, and social limitations. AR 2522–27. She found that these limitations, as well as Plaintiff's substance use throughout his lifetime, presented "major obstacles to obtaining and maintaining gainful employment" for the foreseeable future. AR 2523. The ALJ found Dr. Causeya's opinion unpersuasive because her opinion conflicted with and was not supported by Plaintiff's medical records from 2014 and

2015. AR 21. The ALJ also found the opinion equivocal, as evidenced by Dr. Causeya's use of the term "probably," revealing a lack of certainty. *Id.*

Plaintiff argues that the ALJ improperly assessed evidence regarding Plaintiff's mental health and substance use, particularly during the period of sobriety, and as a result improperly rejected Dr. Causeya's opinion. ECF 17 at 9. Plaintiff contends this was harmful error because had the ALJ given Dr. Causeya's opinion proper consideration, he would have found Plaintiff disabled. *Id.*

The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion's findings will be. 20 C.F.R. § § 404.1520c(c)(2), 416.920c(c)(2). Plaintiff's medical records indicate that when Plaintiff's substance use disorder was in remission, his mental health symptoms were generally well controlled with medication, he denied suicidal ideation and audio hallucinations, and his attention, concentration and memory functioned at a normal level. The ALJ found this to be inconsistent with Dr. Causeya's finding that Plaintiff had functioned poorly throughout his adult life and would continue to face significant obstacles for the foreseeable future. AR 2523.

In assessing supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support her medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § § 404.1520c(c)(1), 416.920c(c)(1). Notably, Dr. Causeya did not review Plaintiff's full medical record from his crucial period of sobriety in 2014 and 2015 in formulating her evaluation. *See* AR 2515. The ALJ found Dr. Causeya's assessment to be unsupported by Plaintiff's full medical records, which suggested a marked improvement in Plaintiff's condition when he was sober. Moreover, the ALJ determined that Dr. Causeya's opinion was equivocal when she stated "[i]t seems [Plaintiff's] substance use

PAGE 14 – OPINION AND ORDER

has *probably* played a major role in the disruption of his life and apparent inability to sustain any gains." AR 21, 2523 (emphasis added). The ALJ's skepticism was reasonable given the potential significance and import of this assessment in Plaintiff's case.

The ALJ's assessment of Dr. Causeya's opinion is supported by substantial evidence and was based on a permissible determination within the ALJ's province. Though Plaintiff may disagree with the ALJ's evaluation of the opinion evidence, this Court does not have the discretion to second-guess the ALJ's findings. *Batson*, 359 F.3d at 1193 (when evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the reasonable interpretation of the ALJ).

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 28th day of October, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge